IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STATE OF OHIO,**

      **Plaintiff,**

v.

**NOBILE & THOMPSON CO., L.P.A.,**

      **Defendant.**

Case No. 2:12-cv-01053
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Plaintiff State of Ohio's Complaint seeking declaratory relief. Though originally filed as a state-court declaratory judgment action, Defendant Nobile & Thompson Co. L.P.A. ("Nobile & Thompson") removed the case to this Court on the purported basis of federal question jurisdiction. On January 30, 2013, the Court convened a hearing on the merits of the Plaintiff's Complaint. Pursuant to the arguments at the hearing, the pleadings filed in this matter, the prehearing briefs of the parties, and the joint stipulations of fact submitted as evidence by the parties, the Court now issues this Opinion and Order.

For the reasons that follow, the Court finds that it cannot reach the merits of the State's claim for a declaratory judgment. The Court lacks subject matter jurisdiction over this cause and therefore remands it to the state court from where it came.

### I.    Background

In a nutshell, this lawsuit deals with whether special counsel appointed by the Ohio Attorney General ("OAG") for collection of consumer debts may use the letterhead of the OAG's office in their collections communications. (ECF No. 1-1 at ¶¶ 4-8, PAGEID# 7.) Under the statutory authority granted by Ohio Rev. Code § 109.08, the OAG regularly appoints

special counsel for the purpose of collecting unpaid consumer debts owed to state agencies that have been certified to the OAG.  The parties stipulated that appointed special counsel are not employees of the State of Ohio, do not receive health care benefits from the State, do not participate in the Public Employees Retirement System, and are not paid a salary for their services.  (ECF No. 16, at ¶ 14, PAGEID# 142.)  Rather, special counsel are independent contractors engaged by the OAG.

The OAG requires special counsel to use OAG letterhead in pursuit of the collection efforts undertaken under special counsel's contract with the State.  (*Id.* at ¶¶ 6-7, PAGEID# 141.)  Defendant Nobile & Thompson, a law firm, has taken the position that the use of OAG letterhead by special counsel violates federal and state law.  (Compl., ECF No. 1-1. at ¶¶ 9-10, PAGEID# 7-8.)  Before the State filed this lawsuit, Nobile & Thompson had sent letters to special counsel and to the Ohio Attorney General, taking the position that the special counsel's use of the letterhead violated the Fair Debt Collection Practices Act ("FDCPA"), the Ohio Deceptive Trade Practices Act ("ODTPA"), and the Ohio Consumer Sales Practices Act ("OCSPA"); in the case of the letters to special counsel, Nobile & Thompson also sought information aimed at discovering the breadth of special counsel's collection activities and the scope of a potential class action.

The State commenced this action in the Franklin County (Ohio) Court of Common Pleas on October 31, 2012.  The State's Complaint pleaded two counts, one for "Declaratory Judgment" and the other for "Injunctive Relief."  (Compl., ECF No. 1-1, at PAGEID# 4-5.)  Count One of the Complaint sought a judgment that the use of OAG letterhead by special counsel "is legal and does not violate any provision of Ohio's Deceptive Trade Practices Act, Ohio's Consumer Practices Act, or the federal Fair Debt Collection Practices Act."  (*Id.* at ¶ 16,

PAGEID# 9.) In Count Two, the Complaint asked for an injunction to prevent Defendant from "interfering with the Attorney General's direction to special counsel that they use Attorney General letterhead in their collection activities." (*Id.* at PAGEID#11.) Nobile & Thompson removed the action to this Court on the purported basis of federal question jurisdiction. (ECF No. 1.) The Notice of Removal argued that the State's Complaint required the Court to determine "a substantial federal question" and was thus an action that arose under the laws of the United States within the meaning of 28 U.S.C. § 1331. (*Id.* at PAGEID# 2-3.)

Under the terms of an Agreed Entry filed prior to the hearing on the merits of this case, the Court dismissed the State's claim for injunctive relief. (ECF No. 7, at PAGEID# 87.) Pursuant to the parties' agreement, the Court ordered that the merits hearing convened in this matter would be for the purpose of issuing a declaratory judgment on the substantive issue of whether special counsel's use of OAG letterhead in its consumer collection communications violates federal and/or state law. (*Id.* at PAGEID# 86.)

On January 30, 2013, the Court convened a hearing on the merits of the State's Complaint.[1] The matter is submitted to this Court for decision based upon the arguments of counsel at the hearing and the joint stipulations (and exhibits thereto) submitted to the Court as evidence in this matter. (ECF No. 16.)

## II. Discussion

The State brought this action seeking a declaratory judgment that the use of OAG letterhead by the special counsel appointed by the OAG does not violate the FDCPA, the ODTPA, or the OCSPA. Before reaching the merits of the State's complaint, however, it is necessary for this Court to determine whether it has subject matter jurisdiction over this action.

---

[1] The hearing was originally scheduled for December 12, 2012. (ECF No. 5.) At the request of the parties at a telephone status conference, the Court continued the hearing to January 30, 2013. (ECF No. 9.)

If subject matter jurisdiction is lacking, the Court has the power to *sua sponte* remand the case to the state court.  *See* 28 U.S.C. § 1447(c); *Page v. City of Southfield*, 45 F.3d 128, 132-33 and n.8 (6th Cir. 1995).

### A.  No Federal Question Appears in the Well-Pleaded Complaint

Before Defendant removed it to this Court, this case originated as a declaratory judgment action in *state* court, purporting to allege "claims" for "Declaratory Judgment" and "Injunctive Relief."  (Compl., ECF No. 1-1, at PAGEID# 10-11.)  It is well settled that federal courts do not have jurisdiction when a federal question is presented by a complaint for a *state* declaratory judgment when the federal court would not have jurisdiction over the same lawsuit if brought under the federal Declaratory Judgment Act.  *See Franchise Tax Bd. of Calif. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983).  Under the federal Declaratory Judgment Act, "there must be an independent basis of jurisdiction, under statutes equally applicable to actions for coercive relief, before a federal court may entertain a declaratory-judgment action."  *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 447 n.47 (5th Cir. 2002) (quoting 10B Wright, Miller, & Kane, Federal Practice and Procedure § 2766 (West 3d ed. 1998)).

Defendant's Notice of Removal posits 28 U.S.C. § 1331 as the basis of federal jurisdiction.  For jurisdiction to attach under 28 U.S.C. § 1331, there must be a federal question appearing on the face of the well-pleaded complaint.  *See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  And because a defendant may remove a case to federal court only if it could have been brought there originally, the question whether removal jurisdiction exists is also determined by reference to the "well-pleaded complaint."  *Id.* (citing 28 U. S. C. § 1441(b)).

4

Perhaps cognizant of the well-pleaded complaint rule, Nobile & Thompson posited the existence of removal jurisdiction based on the rule of *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308 (2005). (ECF No. 1, at PAGEID# 3.) In *Grable & Sons*, the United States Supreme Court held that a federal court could exercise removal jurisdiction over a state-law claim when the state-law claim necessarily raises a disputed and substantial federal issue, so long as the federal forum's exercise of jurisdiction does not disturb any congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons*, 545 U.S. at 314. Based on this rule, the Supreme Court found jurisdiction to exist over a state-law quiet title claim, the disposition of which turned on a disputed issue of federal tax law. Due to the sufficiently substantial federal interest "in providing a federal forum for federal tax litigation," the Supreme Court found removal jurisdiction proper. *Id.* at 315.

*Grable & Sons* does not confer jurisdiction in this case. The basis of federal jurisdiction in *Grable & Sons* was that the plaintiff's complaint pleaded a state-law claim that implicated a substantial and disputed question of federal law. Accordingly, the federal issue appeared on the face of the well-pleaded complaint, embedded in a state-law cause of action. In contrast, this case reveals no such claim. The State's complaint in this case does not even plead a substantive state-law claim at all—rather, it pleaded only purported claims for specific remedies (*i.e.*, a declaratory judgment and a since-dismissed prayer for injunctive relief). Absent a true state-law "claim" beyond one for a declaratory judgment, the Court cannot conclude that the rule of *Grable & Sons* is implicated here.

### B. Jurisdiction in the Declaratory Judgment Context

The conclusion that there is no federal question on the face of the State's Complaint, however, does not necessarily end this Court's jurisdictional inquiry. In the declaratory

judgment context, federal courts (including the Sixth Circuit Court of Appeals) consider whether the facts alleged in the plaintiff's well-pleaded complaint show that the *defendant* could file a coercive action arising under federal law.  *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 775 (6th Cir. 2004); *Samuel C. Johnson 1988 Trust v. Bayfield Cnty., Wisc.*, 649 F.3d 799, 801 (7th Cir. 2011); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861 (11th Cir. 2008);  *Columbia Gas Trans. Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).  "If a well-pleaded complaint by the defendant (the 'natural' plaintiff) would have arisen under federal law, then the court has jurisdiction when the 'natural' defendant brings a declaratory-judgment suit." *NewPage Wis. Sys. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. and Serv. Workers Int'l Union*, 651 F.3d 775, 777-78 (7th Cir. 2011).  As the *Stuart Weitzman* court explained:

> [I]n the context of a declaratory judgment action, the normal position of the parties is reversed; therefore, we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question. Instead, this court must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law.  Our inquiry is thus whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant.  Federal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law.

*Stuart Weitzman,* 542 F.3d at 862 (citations and internal quotations omitted) (quoted with approval in *Severe Records, LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011)).

In this case, Nobile & Thompson has argued that the use of OAG letterhead by the appointed special counsel violates one or more provisions of the FDCPA.  And the letters to special counsel and the OAG submitted as evidence here certainly reveal the possibility of a "coercive action" being brought based on the FDCPA.  But the jurisdictional inquiry is not

6

confined to look simply to the possible existence of just *any* "coercive action" that the declaratory judgment defendant might bring. The federal courts must "consider whether a federal question would arise in a hypothetical non-declaratory suit in which the declaratory-judgment defendant is the plaintiff and the declaratory-judgment plaintiff is the defendant." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012); *see also T T E A v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999) (framing the jurisdictional inquiry as whether the declaratory judgment plaintiff can "show that there would be jurisdiction *over a claim against it*" (emphasis added)). Thus, in this case, this Court has removal jurisdiction over this action if there would be federal jurisdiction over claim by Nobile & Thompson *against the State*. This requirement is not met in this case and compels this Court to conclude that federal subject matter jurisdiction is lacking.

To determine whether Nobile & Thompson could have brought a coercive action against the State in federal court requires an inquiry into whether Nobile & Thompson has standing to bring such a claim. *See, e.g., National Hockey League v. National Hockey League Players Ass'n*, 789 F. Supp. 288, 293 (D. Minn. 1992) (dismissing plaintiff's declaratory judgment action because declaratory judgment defendant lacked standing to bring federal antitrust lawsuit against plaintiff); *Ochsner Health Plan v. N. La. Physician Hosp. Org.*, No. CV-01-2601, 2002 U.S. Dist. LEXIS 24250, at *11 (E.D. La. Dec. 16, 2002) (examining whether declaratory judgment defendant had standing to bring a coercive action under ERISA against plaintiff). The enforcement provision of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). The Sixth Circuit has interpreted the "any person" language as granting standing to both the debtor and those (such as the executor of a debtor's estate) who "stand in the shoes" of

the debtor. *Wright v. Finance Serv.*, 22 F.3d 647, 650 (6th Cir. 1994). Nobile & Thompson, the law firm representing debtors who may potentially bring suit under the FDCPA, does not fit this description. The Court finds no basis upon which Nobile & Thompson would have standing to assert claims under the FDCPA, much less to assert them against the State.

The nature of the threatened claims further cuts against any conclusion that there would be federal subject matter jurisdiction over a coercive suit filed by Nobile & Thompson against the State. As presented to the Court, the issue in this case is whether the use of OAG letterhead by special counsel in their consumer collections communications violates the FDCPA, ODTPA, and/or the OCSPA. While the special counsel appointed by the OAG are using the letterhead at the direction of the OAG, the fact remains it is the special counsel who are drafting, printing, compiling, and distributing the collection letters placed at issue in this case. (ECF No. 16, at ¶ 30, PAGEID# 144.) Thus, it appears that any coercive action brought under the FDCPA would be against the special counsel themselves and not against the State.[2] And even if the State were joined as a defendant in a coercive action under the FDCPA, the Court has considerable doubt that such a claim would survive dismissal on jurisdictional grounds due to the Eleventh Amendment. *See, e.g., Kozaczek v. N.Y. Higher Edn. Servs. Corp.*, No. 11-4437, 2012 U.S. App. LEXIS 23831 (2d Cir. Nov. 20, 2012) (affirming dismissal of FDCPA action against state agency for want of subject-matter jurisdiction on Eleventh Amendment grounds); *Codar, Inc. v. Arizona*, 168 F.3d 498, 1999 U.S. App. LEXIS 949 (9th Cir. 1999) (unpublished table decision) (same).

---

[2] Such an action would bring front and center the issue of whether an attorney acting as special counsel of the OAG is a "debt collector" within the meaning of the FDCPA. Though the parties briefed and argued this issue, the Court does not reach this substantive issue in light of its disposition of the matter on jurisdictional grounds.

## C. Jurisdiction is Lacking Under the Principles of *Franchise Tax Board*

There lies another significant reason why this Court lacks subject matter jurisdiction. The posture in which this case is before the Court is analogous to the procedural posture underlying the Supreme Court's decision in *Franchise Tax Board*. The Supreme Court found subject matter jurisdiction lacking there, which goes a long way toward persuading this Court that jurisdiction is lacking here.

*Franchise Tax Board* began as a lawsuit filed in state court by the California Franchise Tax Board, a state agency charged with enforcement of California's income tax laws. *Franchise Tax Board*, 463 U.S. at 5. The Franchise Tax Board sought among other things a declaratory judgment that the defendant, Construction Laborers Vacation Trust ("CLVT"), was legally obligated to future tax levies. *Id.* at 6. CLVT removed the case to federal court based on a theory that the State's lawsuit implicated the Employee Retirement Income Security Act ("ERISA"). The case eventually made its way to the United States Supreme Court, which held unanimously that the case was *not* within the removal jurisdiction conferred by 28 U.S.C. § 1441. *Id.* at 7.

In finding jurisdiction lacking, the Supreme Court acknowledged that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Id.* at 19. Despite acknowledging this universal jurisdictional rule in the federal courts, the Court found subject matter jurisdiction lacking, even assuming that CLVT could have sought an injunction under ERISA against California's application of state regulations to funds it held in trust. *Id.* at 20. In so holding, the Supreme Court noted the unique aspect of a state being the plaintiff in a declaratory judgment action:

9

> There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law. States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the pre-emption questions such enforcement may raise are tested there. The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes. It did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue. The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction . . . to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts. Accordingly, the same suit brought originally in state court is not removable either.

*Id.* at 21-22 (citation and footnotes omitted).

Though *Franchise Tax Board* involved ERISA and this case involves the FDCPA as the purported federal jurisdictional hook, the rationale is just as compelling here. The State has (and indeed pursued) avenues in Ohio courts available to it to test the validity of the OAG special counsel's use of the OAG's letterhead in their collection communications with consumer debtors. And like ERISA, the grant of federal jurisdiction in the FDCPA is limited to suits brought by certain parties "as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." *Id.* at 21. Congress did not go so far as to *require* a claim implicating the FDCPA to be brought in federal court; quite to the contrary, the FDCPA confers jurisdiction upon the federal *and* state courts to vindicate its provisions. *See* 15 U.S.C. § 1692k(d). Like the Supreme Court in *Franchise Tax Board*, this Court is convinced that the matter brought here is "sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction" (*Franchise Tax Board*, 463 U.S. at 21) as to dictate against the existence of subject matter jurisdiction.

Accordingly, the Court finds that this action does not fall within the Court's removal jurisdiction.

### D. Discretionary Considerations Counsel Against Exercising Jurisdiction

Even if this Court concluded that it *could* exercise subject-matter jurisdiction under the principles set forth above, the analysis does not end. In the context of the federal Declaratory Judgment Act, it is settled that "[t]he statute is an 'enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant' to have a case heard in federal court." *Severe Records, LLC*, 658 F.3d at 580 (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995)). "District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282. Thus, "considerations of practicality and wise judicial administration" could lead a court to, within its sound discretion, decline to entertain a declaratory judgment action. *Id.* at 289. This principle applies not only to actions brought under the federal Declaratory Judgment Act but also to state declaratory judgment actions removed to federal court. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 755 (9th Cir. 1996), overruled on other grounds by *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998); *Leasing One Corp. v. Fid. & Deposit Co. of Md.*, No. 3:11-35-DCR, 2011 U.S. Dist. LEXIS 95683, at *4 (E.D. Ky. Aug. 25, 2011). In this case, practicality and wise judicial administration counsel against this Court's exercise of jurisdiction.

This case comes before the Court in a goofy (for lack of a better term) procedural posture. For starters, the State of Ohio preemptively brought suit against Nobile & Thompson, seeking no relief except declaratory and (originally) injunctive relief, with no underlying substantive cause of action. Goofier still, Nobile & Thompson, the declaratory judgment

11

defendant, would not be the party in the threatened "coercive action"; rather, it would be Nobile & Thompson's *clients* who would be (*i.e.*, the debtors suing under the FDCPA).  Goofier yet, the declaratory judgment defendant's (*i.e.*, Nobile & Thompson's) theoretical coercive action—even assuming it could possibly be a proper plaintiff to bring it—would not be against the declaratory judgment plaintiff (*i.e.*, the State of Ohio).  Rather, the parties' briefing and evidence establishes that the threatened coercive action would be against *the special counsel* who are actually utilizing the OAG letterhead in their collections communications.

In other words, the FDCPA claim upon which the parties hang their jurisdictional hat does not belong to Nobile & Thompson and, even if it did, would not be brought against the State anyway.  The goofy reality is that this Court is asked to exercise federal jurisdiction based upon a threatened FDCPA claim that would involve neither the State of Ohio nor Nobile & Thompson as parties.  Practical and wise judicial administration counsels against a federal tribunal exercising jurisdiction over such goofiness.

### III.    Conclusion

For the foregoing reasons, the Court hereby **REMANDS** this case to the Franklin County (Ohio) Court of Common Pleas.

**IT IS SO ORDERED.**

  /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**